## IN THE MATTER OF THE ESTATE OF JOHN R. HIGGINS, DECEASED.

Union County Court
Probate Division

Decided April 28, 1960.

Mr. *Richard G. O'Brien* for the trustee (*Messrs. Pizzi and O'Brien,* attorneys).

Mr. *Phidias L. Pollis* for the Estate of Frederick Higgins, deceased (*Messrs. Pollis, Williams and Pappas,* attorneys).

FULOP, J. C. C.

### THE ISSUE.

This is an application for allowances to a testamentary trustee and to his attorney on intermediate accounting. The legal question squarely raised is whether the trustee's allowance of commissions on *corpus* must be based on inventory value without regard to unrealized enhancement in market value. On behalf of the trustee it is contended that market value at the time when the compensation is fixed should be taken into consideration. On behalf of the objecting remainderman, it is contended that only inventory value may be considered since the assets which have increased in value have not been sold and the gain has not been realized.

### STATEMENT OF FACTS.

The instant trust has been in existence since May 1, 1943. It provides life income to the testator's widow, with remainder over. The widow is now 82 years of age. Her life expectancy is 5.83 years.

The original inventory value of the *corpus* was $124,951.74. The present adjusted inventory value, after taking into consideration realized gains and losses, is $137,931.32. The market value of the *corpus* as of January 26, 1960, the date to which the accounting runs, is $858,624.23, according to the account.

There have been four prior intermediate accountings. *Corpus* commissions allowed have totalled $4,296.11 or approximately 3½% of average inventory value. Two trustees served until July 1, 1948, when one of them died. Since that date, one trustee served until his death on January 26, 1960, to which date the account now runs. The total period of administration was 16 years and 10 months.

The will permitted the trustees, in their discretion, to retain shares of stock held by decedent. These included shares of stock of the Babcock and Wilcox Company. The

trustees have retained these shares. The increase in market value of these shares has resulted in the enhanced value of *corpus* above referred to.

' The period for which commissions are sought is about four and a half years. In view of the death of the last trustee, the allowance of commissions at this time added to commissions previously allowed will be the total compensation for this trustee's entire period of service.

## THE APPLICABLE LAW.

■ Although the rule appears to be otherwise in other states (90 *C. J. S. Trusts* § 400*b*),

"It is the law of this State that in the absence of an express provision in the trust clearly indicating the contrary, a trustee entitled to commissions on *corpus* may claim an appropriate portion at the time of an intermediate accounting and is not required to wait until the termination of the trust." *Commercial Trust Co. of New Jersey v. Barnard*, 27 *N. J.* 332 (1958).

This rule is recognized by statute. *N. J. S.* 3A:10–2.

Even in jurisdictions where this rule is not fully accepted, *corpus* commissions are allowed upon the conclusion of the service of the trustee without his fault, as in case of death of the trustee before termination of the trust. *Restatement of Trusts,* § 242(*m*) and 90 *C. J. S. Trusts* § 400(*b*).

■ It is also settled that in fixing *corpus* commissions on intermediate accounting,

"It would obviously be improper to make an allowance which would exhaust or endanger the maximum fees permissible, as in the case of a substitution of trustees it would require the succeeding trustees to act without adequate compensation for the conservation of the *corpus*." *In re McMillin's Estate*, 120 *N. J. Eq.* 432 (*Ch.* 1936).

The applicable statutes provide as follows:

"Allowance of commissions on *corpus* in excess of $100,000.00 to executors, administrators, administrators with the will annexed, guardians, trustees under a will and fiduciaries appointed under chapter 40 of this Title for the property of an absentee, shall be made with reference to their actual pains, trouble and risk in settling the estate, rather than in respect to the *quantum* of the estate." *N. J. S.* 3*A*:10–1, as amended *L.* 1957, *c.* 80, *p.* 152, § 1.

"On the settlement of accounts of fiduciaries acting in any capacity referred to in *section* 3*A*:10–1 of this Title, their commissions over and above their actual expenses shall be computed upon the following rates:

On all income that comes into their hands, 6%, without court allowance.

If there is but 1 fiduciary, 5% on all *corpus* that comes into the fiduciary's hands in cases where *corpus* receipts do not exceed $100,000.00, and in cases where *corpus* receipts exceed $100,000.00, 5% on the first $100,000.00 of *corpus*, and, on the excess over $100,000.00 of *corpus*, such percentage, not in excess of 5%, as the court may determine on the intermediate or final settlement of the fiduciary's accounts, according to actual services rendered. If there are 2 or more fiduciaries, their commissions on *corpus* shall be the same as herein provided in the case of 1 fiduciary, and, in addition thereto, the court may allow *corpus* commissions in excess of the commissions to which 1 fiduciary would be entitled under this section, at a rate not exceeding 1% of all *corpus* for each additional fiduciary. In any case in which the administration of the fiduciary or fiduciaries has extended or extends beyond a period of 25 years, *corpus* commissions for such additional years shall be allowed at a rate not exceeding 1/5 of 1% *per annum*, irrespective of the number of fiduciaries." *N. J. S.* 3*A*:10–2, as amended *L.* 1957, *c.* 80, *p.* 152, § 2.

In accordance with the statutory scheme, it is the practice to allow *corpus* commissions on the first $100,000 at the rate of 1/5 of 1% *per annum* for the period covered by each accounting, and at a rate not exceeding 1/5 of 1% *per annum* on sums in excess of $100,000. The commission on the excess over $100,000 is frequently calculated at 3% or 3½% for 25 years, depending upon the "actual pains, trouble and risk." The larger the amount, the greater the risk.

It is said that in calculating the commissions, the value of the trust *corpus* is taken as of the time the compensation of the trustee is fixed. *Restatement of Trusts,* § 242; 90 *C. J. S. Trusts* § 400(*b*)(2); *Appleby v. Appleby,* 140

*N. J. Eq.* 8 (*Ch.* 1947), affirmed 140 *N. J. Eq.* 403 (*E. & A.* 1947). However, on the final accounting *corpus* commissions are fixed for the entire period of service and commissions previously allowed are deducted. Thus the highest value at any time attained may be the basis of allowance. *Blauvelt v. Citizens Trust Co.,* 3 *N. J.* 545 (1949).

Neither the statute nor any reported decision appears to have settled conclusively that the commissions on intermediate accountings shall be based upon inventory value or market value at the time of the accounting. *In re Cox,* 21 *N. J. Super.* 287 (*Ch. Div.* 1952) recognizes market value at the time of the accounting as "an element in fixing commissions." The court held that the increase in market value of securities held "is not especially persuasive for the allowance of unusually large commissions." In *Commercial Trust Co. of New Jersey v. Barnard, supra,* the Supreme Court appears to have approved commissions based upon market value at the time of an intermediate accounting, but did not address itself to the point. In *Blauvelt v. Citizens Trust Co., supra,* the allowance of commissions based on inventory value on intermediate accounting was approved although some of the assets became worthless by the time of final accounting.

An effort has recently been made to settle the matter by statutory enactment requiring the commissions to be based on the true and reasonable value as of the date of the close of the intermediate or final account. *Senate Bill* 211 (1959) so providing was passed by the Legislature and not approved by the Governor. Governor Meyner's statement disapproving this legislation, published at 83 *N. J. L. J.* 156 (March 24, 1960, *p.* 12), after a review of relevant decisions, contains the following:

"The amendment consequently appears to be unnecessary for the stated purpose since it is evidently the law now that current value may be looked to by the court in order that fair compensation may be made on intermediate accounts.

✻        ✻        ✻        ✻        ✻        ✻        ✻        ✻

I am satisfied that in a proper case, such as where a fiduciary is being replaced with another, the court presently possesses full power to look to current values in fixing what will be the final allowance for compensating the outgoing fiduciary.

\*     \*     \*     \*     \*     \*     \*     \*

The point to be kept in mind is that the true index should always be the extent of 'pains, trouble and risk'—a *quantum meruit* approach that is most likely to be fair to all interests—\*   \*   \*"

■ The law is clearly established that as to *corpus* above $100,000, commissions are to be based on the work done and the risk involved. However, as already mentioned, the element of risk necessarily varies to some extent with the value of the property dealt with. The element of value may not therefore be disregarded.

It is argued that market value is no more than an opinion and that it may fluctuate greatly so that by the time of distribution the value considered on intermediate account may disappear. The difficulty is that inventory value is also merely an appraisal and it also may be lost before distribution. See *Blauvelt v. Citizens Trust Co., supra.*

Beyond reserving sufficient to assure compensation to subsequent trustees and thus to assure that trustees will be willing to serve to safeguard the property, there is no reason why intermediate allowances should be based wholly on inventory value any more than final commissions.

Assuming that final commissions are based on the highest value of property coming into the hands of the trustee at any time during the life of the trust or, in the alternative, that the value at the time of final accounting is used as the basis for allowances and that the value in this case remains at approximately the present value, it would be most unjust to the estate of the deceased trustee to confine his commissions to inventory value. Assuming that the trust continues for a total of 25 years, the total *corpus* commissions might be calculated as follows:

| | |
|---|---|
| 5% of $100,000 ........................... | $5,000.00 |
| 3½% of $758,000 ........................ | 26,530.00 |

| | | |
|---|---|---|
| TOTAL CORPUS COMMISSIONS ............... | | $31,530.00 |
| Less: | | |
| Prior allowances for 12 years ... | $4,296.11 | |
| Current allowance ½% of inventory | 689.65 | |
| TOTAL for 16 years and 10 months ........ | | 4,985.76 |

BALANCE AVAILABLE for 8 years and 2 months $26,544.24

Thus the future trustees for 8 years and 2 months might conceivably receive five times as much as the trustee who served for 16 years and 10 months. A calculation based on the maximum allowable would show an even greater discrepancy. This would obviously be unfair.

## CONCLUSION.

█ It seems clear that the court has discretionary power to take into consideration all of the facts, including the current market value of *corpus,* that inventory value has no magic significance, that an adequate reserve below maximum should be reserved for future trustees, and that the court should attempt to balance all of the elements of "pains, trouble and risk" and "find ways by which the necessary statutory maximums will not unduly result in undercompensation for some or over-recognition of mere paper profits for others" (Governor's statement above cited).

The accountant is allowed *corpus* commissions of $10,000, his attorney $7,000, and the remainderman's attorney is allowed $1,000 for services to the trust.